WILL OF RASMUSSEN : RITT and another, Respondents,
vs. RASMUSSEN, Appellant.

*September 12—October 8, 1957.*

For the appellant there was a brief by *Konnak & Constantine* of Racine, and oral argument by *Charles M. Constantine*.

For the respondents there was a brief by *J. Lester Johnson* of Racine, for Irene Ritt, and by *Gilbert N. Geraghty* of Racine for Carl Rasmussen, Jr., and oral argument by *Mr. Geraghty*.

BROADFOOT, J. Mrs. Rasmussen was admitted to St. Mary's hospital in the city of Racine on November 10, 1954. The hospital record shows that at that time she was suffering from diabetes mellitus, arthritis, arteriosclerotic and hypertensive heart disease and senile dementia. She remained a patient at said hospital until September 20, 1955, at which time she was transferred to the general hospital section of the Racine county hospital but not as a mental patient. She remained there until she died. Her estate at the time of her death consisted of a home in Racine and a small amount of cash.

By the terms of the 1955 will the residue of her estate was devised and bequeathed to the First National Bank & Trust Company of Racine in trust. The trustee was therein directed to see that Andrew Rasmussen, an unmarried son of decedent, who was about fifty-eight years of age, should be suitably supported and provided for during his lifetime. After Andrew's death the trustee was directed to provide

for his burial and to pay any residue to a grandson, Carl Rasmussen. Andrew Rasmussen had always lived with his parents up to the death of his father and he continued to reside with his mother thereafter until she went to the hospital.

The 1953 will devised and bequeathed all of the residue of the decedent's estate to her son, Harold C. Rasmussen, and his wife, upon condition that they should occupy the home and provide therein a home for Andrew. The will further provided that, should said Harold C. Rasmussen and his wife fail to perform the conditions of the will, all of the property should go to Andrew, except that $1,000 should be paid over to Carl Rasmussen.

A copy of a prior will dated in January, 1948, was offered and received in evidence. By the terms of the 1948 will the residue of the estate was devised and bequeathed to the First National Bank & Trust Company of Racine in trust. By the terms of said will the trustee was directed to use the sum of $1,500 for the use and benefit of a grandson, Carl Rasmussen, for the purposes of obtaining a college or university education. If he did not seek such education then said amount with accumulated income was to be paid to him when he reached the age of twenty-one years. The trustee was directed to provide for the support of Andrew Rasmussen during his lifetime and to provide for his funeral and burial after his death. Any residue was to be paid by the trustee to Carl Rasmussen.

The first witness for the proponent of the 1955 will was the scrivener, a reputable attorney who had practiced in Racine for more than thirty-five years. He testified that he was notified by Mrs. Ritt that her mother wanted to make a will. He accompanied Mrs. Ritt to the hospital and arrived there about two o'clock in the afternoon on April 8, 1955. He talked with Mrs. Rasmussen for approximately two hours in regard to the will. He asked her the usual questions, discussed the terms of the will with her, and made

notes as to what provisions should be included in the will. During that period Mrs. Ritt and a workman, who was either painting or cleaning the walls of the room, were present. He returned to his office and drafted the will in typewritten form. He returned to the hospital in the evening with his wife, and with Mrs. Ritt and a friend of the Rasmussen family. He testified that he read the will over to Mrs. Rasmussen paragraph by paragraph and ascertained that each provision met with her approval. Thereafter Mrs. Rasmussen executed the instrument by making her mark. The scrivener and his wife duly signed as attesting witnesses. Thereafter they conversed with Mrs. Rasmussen for some time and then left. The scrivener testified that Mrs. Rasmussen was alert, was able to tell him what she wanted in her will, that she understood the will, and that she was rational and competent both in the afternoon and in the evening. His wife testified to the same effect so far as the evening conference and conversation were concerned.

At that point the contestant called several witnesses. Those witnesses were the physician who attended Mrs. Rasmussen during the entire period of her stay in St. Mary's hospital, five nurses who attended her, the contestant and his wife, and some other disinterested persons who became acquainted with Mrs. Rasmussen while in St. Mary's hospital. These witnesses testified that in their opinion Mrs. Rasmussen was not competent to make a will on April 8, 1955, for reasons that were given. The doctor testified that in his opinion, because of senile dementia, Mrs. Rasmussen was incompetent to understand and execute a will on April 8th, and had been for some time prior thereto. The others testified to the same effect.

None of the contestant's witnesses were in Mrs. Rasmussen's room during her afternoon conference with the scrivener or in the evening when the will was executed. So far as the hospital records were concerned, her physician had

not seen her since April 6, 1955. His note in the hospital record on April 6th was as follows: "Patient has periods of confusion but is quite well oriented today." Prior to the trial the opposing attorneys had a conference with the physician at the hospital with a view to stipulating as to the admission of certain hospital records. At that conference the physician stated that he did not see his patient on April 8th. On cross-examination he stated that he may have made a statement at the conference that Mrs. Rasmussen was competent at times. Upon the trial he said the statement was based upon his understanding that Mrs. Rasmussen had signed her name in full to the will. When he learned that she merely made her mark thereon he felt that she was incompetent.

Thereafter the proponent of the 1955 will called other witnesses, including herself, who testified that in their opinion and for stated reasons they believed her to be legally competent at the time of the execution of the will.

The contestant first contends that the finding of the trial court that Mrs. Rasmussen had testamentary capacity on April 8, 1955, is against the great weight and clear preponderance of the evidence. The arguments made to support that position in brief are that the trial court did not give adequate weight to the testimony of the physician and the nurses and that it gave excessive weight to the testimony of the scrivener, a lawyer. Further, that the trial court did not properly weigh the testimony of the lay witnesses, and failed to give adequate weight to circumstantial evidence as to the decedent's incompetence.

In a memorandum decision the trial court reviewed the testimony of each witness. It indicated therein that the will was a natural one. Her main concern, as indicated in all of the wills that were produced, was to care for her bachelor son, Andrew, with some provision for Carl Rasmussen, who apparently was her favorite among her grandchildren.

There was a direct conflict in the evidence as to the competency of Mrs. Rasmussen. With the evidence well in mind and after giving such weight and credibility to the testimony of each witness that it felt it deserved, the trial court found that the decedent was competent on April 8, 1955, and admitted the will bearing that date to probate.

Where there is a direct conflict in the evidence, as here, the weight and credibility to be given to the testimony of each witness is clearly for the trial court. We have carefully reviewed the testimony, the provisions of the different wills, and the medical records that are in evidence. From this review we cannot say that the findings of the trial court are against the great weight and clear preponderance of the evidence.

The contestant admits that it was his burden to establish lack of testamentary capacity by clear and satisfactory evidence and contends that he met that burden. He claims, however, that because of the medical testimony and the medical history of Mrs. Rasmussen the burden shifted to the proponent to establish by clear and satisfactory evidence that the testatrix executed her will during a lucid interval. Assuming, but not deciding, that such is the rule, the proponent's witnesses testified clearly that the testatrix was lucid and rational both in the afternoon and evening of April 8th. That testimony was satisfactory and convincing to the trial court who had the duty of passing upon the credibility of the witnesses and the weight to be given to their testimony. We find nothing in the argument of the contestant that would justify this court in reversing the findings of the trial court.

Finally the contestant argues that he is entitled to costs. He cites sec. 324.12, Stats., which provides as follows:

"COSTS IN WILL CONTESTS. Costs shall not be awarded to an unsuccessful contestant of a will unless he is a special guardian appointed by the county or circuit judge, or is

named as an executor in a paper propounded by him in good faith as the last will of the decedent."

The trial court made no finding either way as to the good faith of the contestant. It is argued that no one has challenged contestant's good faith, and that since he was an executor in a paper propounded by him in good faith as the last will of the decedent he is clearly entitled to costs under the statute. We do not so construe the statute. It provides that costs shall never be awarded to an unsuccessful contestant of a will except in the two cases mentioned therein. As to special guardians and to executors in a paper propounded by them in good faith as the last will of the decedent, the statute makes the allowance of costs to an unsuccessful contestant of a will discretionary. The trial court in its discretion decided not to allow costs in this instance. We can find no abuse of discretion.

*By the Court.*—Order affirmed.